# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AGATHA MARTIN WILLIAMS,  ) | CASE NO. 5:14-CV-1304 |
|         ) | |
|         Petitioner,  ) | JUDGE LIOI |
|         ) | |
|     v.  ) | MAGISTRATE JUDGE VECCHIARELLI |
|         ) | |
| BENNY KELLY,  ) | |
|         ) | **REPORT AND RECOMMENDATION** |
|         Respondent.  ) | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Agatha Martin Williams ("Petitioner" or "Williams"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Williams*, Case No. 2012-CR-164 (Stark County Apr. 21. 2014). (Doc. No. 25-1 at Ex. 24.) Also pending before the Court is a motion to intervene, filed by six individuals whose connection to this habeas proceeding is not apparent from the record. (Doc. No. 34.) For the following reasons, the magistrate judge recommends that: (1) the petition be dismissed; and (2) the motion to intervene be denied.

## I. Introduction

The state appellate court that affirmed Petitioner's conviction noted the following facts:

> Appellant Agatha Williams was admitted to the practice of law in Ohio in 1991. She practiced law for approximately twenty years.
>
> On February 10, 2012, Appellant entered a plea of guilty to four counts of grand theft, one count of theft and one count of forgery. The trial court sentenced Appellant to five years of community control, one year of which was to be intensive supervision probation. Appellant was fined $27,500.00 and ordered to pay restitution to each of her clients for the amounts stolen. Appellant was informed at sentencing a violation of her community control sanction would result in a maximum consecutive prison sentence being imposed on each offense for a total prison term of 102 months.
>
> On September 27, 2012, the Ohio Supreme Court Board of Commissioners on Grievances and Discipline held proceedings to determine whether Appellant should be permanently disbarred.[1] Counsel for Relator called Appellant on cross examination, inquiring as to when Appellant had last left the State of Ohio. Appellant responded approximately a week prior to the hearing she had gone to Pittsburgh, Pennsylvania to gamble. Appellant's conduct in leaving the state to gamble violated the terms and conditions of her probation.

---

[1] In April 2012, the Ohio Supreme Court, upon receiving a certified copy of the judgment entry reflecting Petitioner's felony conviction, imposed an interim suspension of her license to practice law, and directed the Stark County Bar Association to investigate and commence disciplinary proceedings against Petitioner. *In re Williams*, 965 N.E.2d 313 (Table), 131 Ohio St.3d 1514 (Ohio 2012). After the September 2012 disciplinary hearing, the Board of Commissioners on Grievances and Discipline recommended that Petitioner be indefinitely suspended from the practice of law. *Stark County Bar Assoc. v. Williams*, 998 N.E.2d 427, 429, 137 Ohio St.3d 112, 113 (Ohio 2013). In September 2013, the Ohio Supreme Court determined that Petitioner's misconduct merited a greater sanction than indefinite suspension, and permanently disbarred her from the practice of law in Ohio. 998 N.E.2d at 433-34, 137 Ohio St.3d at 118-19.

> [In September 2012, b]ased upon Appellant's testimony before the Board of Commissioners on Grievances and Discipline, the state filed a motion to revoke Appellant's probation [alleging that Petitioner had violated the terms of her probation by leaving the state without permission and by failing to make restitution payments since June 2012]. Appellant's counsel filed a motion in limine to suppress the testimony given at the disciplinary hearing.

*State v. Williams*, No. 2013CA189, 2013-Ohio-3448. ¶¶ 2-6 (Ohio App. Ct. Aug. 5, 2013).

## II.  State Court Proceedings

### A.  Trial Court Proceedings

On September 26, 2012, the trial court conducted a hearing on Petitioner's motion to suppress the testimony she gave at the disciplinary hearing. (Transcript of September 26, 2012 Hearing ("Suppression Tr."), Doc. No. 25-2 at Ex. 35.)  Through counsel, Petitioner argued that admission of her disciplinary hearing testimony would violate her constitutional right against self incrimination.  (*Id*. at 11-12.)  Specifically, Petitioner argued that, under the United States Supreme Court's decision in *Garrity v. New Jersey*, 385 U.S. 493 (1967), because she was compelled to testify at the disciplinary hearing in order to maintain her license to practice law, admission of that testimony in her probation revocation proceedings violated her Fifth Amendment rights. (*See, e.g., id*. at 20-23, 27-29.)  After argument from Petitioner's counsel and the State, the trial court denied the motion to suppress, finding that the reasoning of *Garrity* did not apply:

> The State of Ohio, because of [Petitioner's] knowingly, voluntarily and intelligently pleading guilty to the [fourth and

3

> fifth degree felonies for which she was indicted], under their procedure was going to suspend her license. She had the opportunity to contest that if she wanted. [Or, she] could not have contested that. She decided that she wanted to contest that. And by doing that, she put herself into the position that she could be called on cross-examination.
>
> Petitioner had the opportunity to invoke her right against self-incrimination, pursuant to the Fifth Amendment of the United States Constitution, if she wanted to. She chose not to. She had not been granted immunity.

(*Id*. at 35.)

On September 27, 2012, the trial court conducted a hearing on the motion to revoke Petitioner's probation. Transcript of September 27, 2012 Hearing ("Revocation Tr."), Doc. No. 25-1 at Ex. 10.) The State offered the testimony of Attorney Richard Milligan, who had represented the Stark County Bar Association in the disciplinary proceedings against Petitioner. (*Id*. at 10-11.) He described the line of questioning that resulted in Petitioner admitting that she had traveled outside the state of Ohio:

> Q: And at [the disciplinary hearing], you called [Petitioner] as a witness?
>
> A: I did.
>
> Q: And that was upon cross-examination?
>
> A: It was.
>
> Q: So she was called first?
>
> A: She was.
>
> Q: During that hearing, did you ask – did you begin a line of questioning about Ms. Williams's travels out of the State of Ohio?
>
> A: I did.

> Q: And what was the purpose of that line of questioning?
>
> A: Well, the hearing, in part, was about her theft of client funds, and part of her mitigating evidence was that she had a gambling addiction, and I wanted to show that she had also used the money extensively – or used the money to extensively travel all over the country. So I had many of her account statements, including her personal account and her operating account, that I led her through those to demonstrate how frequently she had traveled out of state.
>
> Q: And then did you ask her when [was] the last time she had traveled out of state?
>
> A: I did.
>
> Q: And what was her answer?
>
> A: She responded that it was the week prior to the hearing.[2]
>
> Q: And did she tell you where she went and for what purpose?
>
> A: I'm not sure she told me the state, but she told me she went out of the state and she gambled.

(*Id*. at 15-16.) On cross-examination, Petitioner's counsel elicited testimony from Attorney Milligan regarding the potential consequences had Petitioner declined to testify at the disciplinary hearing:

> Q: So would it be fair to say if [Petitioner] wanted to keep her license or intended to continue to make her living as a lawyer, she had to show up at that hearing and do what was asked of her?

---

[2] Ohio Rule of Evidence 101(C)(3) specifically excepts application of the Ohio Rules of Evidence to probation revocation hearings. *See, e.g., Columbus v. Bickel*, 601 N.E.2d 61, 68, 77 Ohio App.3d 26, 37 (Ohio App. Ct. 1991) (noting that the exception set forth in Rule 101(C)(3) precludes application of the hearsay rule to probation revocation proceedings).

5

> A: Well, I'm not sure I'd characterize it that way. Certainly her participation in the process I think would be viewed as critical to how the Court looks at what they should do about her license. But her failure to participate does not mean there's going to be any particular sanction.
>
> So the panel and then the Board of Commissioners, and ultimately the Court, would have to make an independent judgment about what is the appropriate discipline. And they do that whether she participates in the disciplinary process or not. And there are lawyers who don't participate who don't get disbarred, but who get a sanction that's appropriate for their conduct.

(Revocation Tr. 23-24.) Attorney Milligan also testified that, after the close of the disciplinary hearing, he reviewed Petitioner's sentencing order and realized that the travel described by Petitioner during her disciplinary hearing testimony "might be in violation of the probation order." (*Id*. at 29.) Milligan "felt, as an officer of the court, [that he] needed to let the Prosecutor's office know that." (*Id*.)

At the hearing, the State also presented evidence that Petitioner had failed to follow the restitution requirements set forth in her sentencing order. (Revocation Tr. at 47.) Specifically, the State elicited testimony that Petitioner had failed to make her restitution payments for July, August and September 2012. (*Id*. at 47-48.) After the close of evidence at the hearing, the trial court found that Petitioner had violated the terms and conditions of her probation as set forth in the motion to revoke her probation. (*Id*. at 69.)

In October 2012, the trial court revoked Petitioner's probation, and imposed consecutive terms of imprisonment totaling 102 months. (Doc. No. 25-1 at Ex. 11.)

**B.     Direct Appeal**

On direct appeal, Petitioner, through new counsel, asserted the following assignments of error:

> I.    The trial court did not make the necessary findings of fact before sentencing Williams to consecutive terms of imprisonment under Ohio Revised Code Section 2929.14(C)(4).
>
> II.   Williams' statements to the Board of Commissioners on Grievances and Discipline should not have been used against her in order to impose a criminal penalty.

(Doc. No. 25-1 at Ex. 15.) In August 2013, the state appellate court affirmed Petitioner's conviction. *Williams*, 2013-Ohio-3448 at ¶ 39.[3] Petitioner, through counsel, filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court. (Doc. No. 25-1 at Exs. 19, 20.) She asserted the following proposition of law:

> The Fifth Amendment protects lawyers in disciplinary hearings, entitles them to refuse to answer incriminating questions without adverse disciplinary effect and, if they are forced to answer despite this right, their answers cannot thereafter be used in "any criminal case."

(Doc. No. 25-1 at Ex. 20.) In December 2013, the Ohio Supreme Court declined

---

[3] Although it affirmed Petitioner's conviction, the state appellate court concluded that the trial court had failed to make the findings of fact required to impose consecutive sentences, and remanded the case for re-sentencing. *Williams*, 2013-Ohio-3448 at ¶ 39. In April 2014, the trial court conducted a re-sentencing hearing, made the required findings of fact, and imposed the same 102-month sentence. (Doc. No. 25-1 at Ex. 24.) Petitioner subsequently appealed from her re-sentencing. (Doc. No. 25-2 at Ex. 26.) In March 2015, the state appellate court affirmed the trial court's re-sentencing. (See Fifth District Court of Appeals Case No. 2014CA86, entries at 03/02/2015.) Petitioner filed a notice of appeal in the Ohio Supreme Court. (*Id.*, entry at 04/15/2015.) To date, that appeal remains pending. (*See* Ohio Supreme Court Case No. 15-562.) Petitioner does not assert any grounds for habeas relief related to her sentence.

7

jurisdiction. *State v. Williams*, 999 N.E.2d 696 (Table), 137 Ohio St.3d 1442 (Ohio 2013). Petitioner filed a petition for a writ of certiorari, which the United States Supreme Court denied in May 2014. *Williams v. Ohio*, 134 S. Ct. 2294 (2014).

### III. Proceedings in this Court

In February 2014, Petitioner, *pro se*, filed her § 2254 petition in the United States District Court for the Southern District of Ohio. (Doc. No. 1.) In April 2014, the Southern District transferred the petition to this Court. (Doc. No. 15.) In her petition, Petitioner asserts the following grounds for relief:

> I. The Fifth Amendment of the United States Constitution protects lawyers in disciplinary hearings and entitles them to refuse to answer incriminating questions without adverse effects, and if they are forced (compelled) to answer despite this right, their answers cannot thereafter be used against them in "any criminal case."
>
> The trial court denied Petitioner Williams due process of law by denying her Fifth Amendment right against self-incrimination and being a witness against herself in violation of federal law and the United States Constitution.
>
> II. Petitioner Williams [*sic*] belief [that] her statements were compelled on threat of job loss (disbarment) was objectively reasonable under the totality of the circumstances.
>
> III. Williams [*sic*] statement during her disciplinary hearing was compelled.
>
> IV. Williams [*sic*] statement during her disciplinary hearing was incriminating.

(Doc. No. 1.) In August 2014, the State filed its Answer/Return of Writ in this matter. (Doc. No. 25.) In October 2014, Petitioner filed her Traverse. (Doc. No. 33.)

In May 2015, a group of individuals – Wayne R. Albright, Desa P. Hooter, Amber Lambert, Angela McConnell, Heather Opel, and Lisa K. Sexton (collectively, "Intervenors") – filed a motion to intervene as plaintiffs in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Doc. No. 34.) Thereafter, Respondent filed opposition to the motion to intervene. (Doc. No. 35.)

### IV. Procedural Issues and Motion to Intervene

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Stark County, Ohio sentenced Petitioner. (Doc. No. 25-1 at Ex. 24.) Stark County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over the § 2254 petition.

**B.     Motion to Intervene**

Rule 24 provides for both intervention of right and permissive intervention. Under subsection (a) of the Rule, a court must permit the intervention of anyone who: (1) has an unconditional right to intervene under a federal statute; or (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)-(2). The Sixth Circuit has determined that a motion seeking intervention of right must satisfy four criteria: (1) the motion to intervene is

9

timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect his or her interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007).

Subsection (b) of Rule 24, which describes permissive intervention, permits a court to allow the intervention of anyone who: (1) has a conditional right to intervene under a federal statute; or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)-(B). With respect to either type of intervention, the individual or entity seeking to intervene bears the burden of establishing the necessary criteria. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (intervention of right); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983) (permissive intervention).

In their motion, Intervenors request leave to intervene under both subsections of Rule 24. Their argument in support is, in its entirety, as follows:

> Intervenors will provide questions of laws and facts that are common in this action in support of Agatha Martin Williams [*sic*] claims.
>
> Intervenors will provide this honorable court evidence - which consists of documents, exhibits, records, transcripts, emails, charts, and photographs related to this Litigation.
>
> Intervenors have a common vested interest in this Litigation.
>
> Intervenors respectfully pray this Court will grant their motion for relief.

(Doc. No. 34.)

Intervenors' perfunctory arguments are insufficient to establish eligibility for either type of intervention. They do not assert that they have any conditional or unconditional right to intervene under a federal statute. Although they allege a "common vested interest in" these proceedings, they do not describe that interest. Nor do they explain how they satisfy any of the criteria for either type of intervention. In sum, Intervenors' broad assertions provide no basis for this Court to conclude that they are entitled to intervene under either theory in this case. Accordingly, Intervenors have not met their burden of demonstrating that intervention is appropriate in this case, and the motion to intervene should be denied.

### V. The Merits of Petitioner's Claim

**A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in

light of the evidence. See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. See *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id*. at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. See *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Id*. at 520-21 (internal citations and quotation marks

12

omitted).

Given the deference applied to state court rulings in a federal habeas proceeding, Petitioner's burden in this case is substantial. In order to succeed, Petitioner must show that the state court's application of federal law was objectively unreasonable, not merely incorrect. See Harrington v. Richter, 562 U.S. 86, 102 (2011) ("It bears repeating that even a strong case for relief does not meant the state court's contrary conclusion was unreasonable."). In order to satisfy this deferential standard, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. Petitioner's argument, however, while perhaps raising an interesting question, fails to establish that her claim satisfies the standard for habeas relief.

Here, Petitioner relies on *Garrity* to contend that the trial court's use of her testimony from the attorney disciplinary proceeding violated her Fifth Amendment right to be free from self-incrimination.[4] In *Garrity*, the Supreme Court of New Jersey ordered an investigation into the fixing of traffic tickets. The New Jersey attorney general questioned police officers regarding the issue. Prior to questioning, each police officer was informed that: (1) anything he said could be used against him in a criminal prosecution; and (2) he could invoke his privilege against self-incrimination; but (3) if he refused to answer, he would be subject to removal from office pursuant to a New

---

[4] Although Petitioner purports to assert four grounds for relief in her habeas petition, only the first ground for relief actually alleges a constitutional violation. The second, third and fourth grounds assert facts or legal conclusions in support of the alleged constitutional violation.

13

Jersey statute that prohibited public employees from refusing to testify in this context. The officers in *Garrity* answered investigators' questions, and, thereafter, their statements were used in their subsequent criminal prosecutions for conspiracy to obstruct the administration of traffic laws.  The officers objected to the use of their statements at trial on the basis that the statements had been coerced.  The officers were convicted and the state courts affirmed the convictions.

On *certiorari*, the United States Supreme Court concluded that the use of the officers' statements at trial violated the Fourteenth Amendment because the statements were obtained by coercion:

> The choice given petitioners was either to forfeit their jobs or to incriminate themselves.  The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free speech to speak out or remain silent.  That practice, like interrogation practices we reviewed in *Miranda v. Arizona*, [384 U.S. 436, 464-65 (1966)], is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice."  We think the statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions.

*Garrity*, 385 U.S. at 497-98.

In this case, the state appellate court rejected Petitioner's claim based on *Garrity*, finding that case inapplicable for several reasons:

> The state of Ohio filed a motion to revoke Appellant's probation based upon Appellant's statement.  Appellant cites the United States Supreme Court decision in [*Garrity*,] arguing statements obtained under threat of job loss are unconstitutionally coerced and inadmissible subsequent criminal proceedings.  Under *Garrity*, the employee claiming coercion must have believed his or her statement was compelled on threat of job loss, and this belief must have

> been objectively reasonable.
>
> Here, Appellant did not make the statement under compulsion of job loss, but rather, as a defense in mitigation of the possibility of job loss. The statement was not compelled. Appellant could have asserted her Fifth Amendment rights at the disciplinary hearing and challenged the sanction, but failed to do so. Further, Appellant had already been found guilty of criminal wrongdoing and the statements were made as a defense why she had engaged in the wrongdoing. The statement itself did not serve to incriminate Appellant because the conduct itself was not criminal but rather a condition of probation. Accordingly, we find the trial court did not err in considering the statements during the revocation proceedings herein.

*Williams*, 2013-Ohio-3448 at ¶¶ 36- 37.

The state appellate court's analysis of Petitioner's claim emphasized a key distinction between this case and *Garrity* that precludes habeas relief in this matter: in this case, Petitioner offers no evidence that her statement during the disciplinary committee was coerced. In *Garrity*, the police officers gave their statements after being informed that, if they declined to do so, they would lose their jobs by operation of state law. Their choice was "one between self-incrimination or job forfeiture." *Garrity,* 385 U.S. at 496. The actual threat of job loss operated as coercion that deprived the police officers of their "free choice to admit, to deny, or to refuse to answer," and, thus, violated their right to due process. *Id*. (internal quotation marks omitted).

In this case, Petitioner not compelled to choose between unequivocal alternatives of testimony or possible job loss. Although she argues in her petition that she believed she would face additional sanction – specifically, the suspension of her law license – if she refused to answer questions at the disciplinary hearing, she points to nothing in the record establishing that a failure to testify at the hearing would result in

15

the loss of her law license. Rather, as noted by the appellate court, at the disciplinary proceeding, Petitioner could have asserted her right against self-incrimination and then challenged any sanction that arose out of that assertion. Unlike the circumstances in *Garrity*, there is no Ohio law or rule of professional conduct compelling a lawyer to incriminate herself at a disciplinary proceeding. Indeed, in a case decided on the same day as *Garrity*, the United States Supreme Court determined that a lawyer's exercise of his privilege against self-incrimination in a disciplinary proceeding could not be the basis for disbarment. *Spevack v. Klein*, 385 U.S. 511, 514 (1967) ("[T]he Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth, [and] it extends it protection to lawyers as well as to other individuals, and . . . it should not be watered down by imposing the dishonor of disbarment and the deprivation of livelihood as a price for asserting it."). In this case, Petitioner presents no evidence in the record that she was prohibited from exercising her right against self-incrimination. Petitioner's alleged subjective belief that she would be disbarred if she failed to respond to questions at her disciplinary hearing simply is not comparable to the actual threat of job loss faced by the police officers in *Garrity*.

Given the factual differences between this case and *Garrity*, the state appellate court's conclusion was not contrary to clearly established federal law. Nor was the state court's decision an unreasonable application of clearly established federal law. Petitioner has identified no United States Supreme Court case law requiring the conclusion that the use of her disciplinary proceeding testimony during her probation revocation hearing violated her constitutional rights. See *Woods v. Donald*, ___ S. Ct.

16

\_\_\_, \_\_\_ U.S. \_\_\_, 2015 WL 1400852, *3 (March 30, 2015) ("We have explained that 'clearly establish Federal law' for the purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.") Thus, Petitioner has failed to demonstrate that the state court ruling regarding her claim for relief was objectively unreasonable. Accordingly, Petitioner is not entitled to habeas relief on this ground.[5]

### VI. Conclusion.

For the reasons given above: (1) the petition should be dismissed; and (2) Petitioner's motion should be DENIED as moot.

Date: June 19, 2015                     /s/ *Nancy A. Vecchiarelli*
                                        United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.**

---

[5] The State argues that, even if the use of Petitioner's disciplinary hearing testimony was an error, it was harmless because the state trial court also found that she had violated her probation by failing to comply with her financial obligations. Although it is true that the trial court accepted this allegation in support of the motion to revoke Petitioner's probation, nothing in the record indicates whether the trial court would have imposed the same sanction – a 102-month term of imprisonment – as a result of Petitioner's failure to make three restitution payments.

17