UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AGATHA MARTIN WILLIAMS, | ) | CASE NO. 5:14-cv-1304 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RONETTE BURKES, Warden, | ) | **AND ORDER** |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Nancy Vecchiarelli, recommending that the petition for writ of habeas corpus be denied. (Doc. No. 39 ["R&R"].) Petitioner Agatha Martin Williams ("Williams" or "petitioner") filed her objections. (Doc. No. 42 ["Obj."].) Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed herein, the R&R is accepted, the petition for writ of habeas corpus is denied, and this case is dismissed.

Further, petitioner's motion for bond (Doc. No. 47) is denied, as is the motion to intervene filed by six non-parties (Doc. No. 34).[1]

I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is

---

[1] Since these six individuals have no relationship to this habeas petition, the R&R recommends that the motion to intervene be denied. No objections have been filed with respect to this recommendation, although the docket reflects that each of the six movants was sent a copy of the R&R, with only one being returned as undelivered. Finding the reasoning of the R&R to be correct, the Court accepts the recommendation and denies the motion to intervene.

dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

As the Court applies this standard for review of objections to the R&R, it must be further mindful of the relevant underlying standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), namely, that habeas relief may be granted only if "the adjudication of the claim [in State court] – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Petitioner's challenge here relates only to whether there was an "unreasonable application of clearly established federal law[.]"

## II. DISCUSSION

A.  Background[2]

Petitioner practiced law in Ohio for about twenty years. On February 10, 2012, she entered a plea of guilty to four counts of grand theft, one count of theft and one count of forgery. The trial court sentenced her to five years of community control, one year of which was to be intensive supervision probation, fined her $27,500.00, and ordered her to pay restitution to each of her clients for the amounts stolen from them. Petitioner was told at sentencing that any violation of the conditions of her probation would result in a maximum consecutive prison

---

[2] The procedural and factual background is set forth in detail in the R&R. Petitioner has offered no specific objections with respect to either. Therefore, to that extent, the R&R is accepted.

sentence being imposed on each offense, for a total prison term of 102 months. One of these conditions was that she was not permitted to leave the state without prior written permission from the probation authority. (Doc. No. 25 ["Return"], Ex. 5 at 194.)[3]

On September 27, 2012, the Ohio Supreme Court Board of Commissioners on Grievances and Discipline conducted proceedings to determine whether Williams should be permanently disbarred. In a short exchange on cross examination by counsel for the relator, Williams testified as follows:

> Q. If we look at the last document in that exhibit, which is Bates 1343 from Exhibit B of the stipulation, your operating account, it shows that on November 26th of 2010, you were in Houston, Texas; is that true?
>
> A. Yes.
>
> Q. Without belaboring the point, is it true that into 2011, you continued to take trips out of state; is that true?
>
> A. Yes.
>
> **Q. When was the last time you took a trip out of state?**
>
> **A. It was about a week ago.**
>
> **Q. Where did you go?**
>
> **A. To Pittsburgh, casino.**
>
> **Q. To gamble?**
>
> **A. Yes.**

(Doc. No. 33 ["Traverse"], Ex. A at 701 (emphasis added).) Based on this testimony, the state filed a motion to revoke petitioner's probation and she filed a motion to suppress. Following a hearing, on September 27, 2012, the trial court denied the motion to suppress. (Return, Ex. 9 at 209.) On October 15, 2012, the trial court revoked petitioner's probation and sentenced her to consecutive prison terms for a total of 102 months in prison. (*Id.*, Ex. 11.)

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

> The trial court was affirmed on appeal, with the court of appeals concluding as follows:
>
> {¶ 36} … Appellant cites the United States Supreme Court decision in *Garrity v. New Jersey,* 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967) arguing statements obtained under threat of job loss are unconstitutionally coerced and inadmissible in subsequent criminal proceedings. Under *Garrity*, the employee claiming coercion must have believed his or her statement was compelled on threat of job loss, and this belief must have been objectively reasonable. *State v. Graham,* Slip Opinion 2013-Ohio-2114.
>
> {¶ 37} Here, Appellant did not make the statement [at her disciplinary hearing] under compulsion of job loss, but rather, as a defense in mitigation of the possibility of job loss. The statement was not compelled. Appellant could have asserted her Fifth Amendment rights at the disciplinary hearing and challenged the sanction, but failed to do so. Further, Appellant had already been found guilty of criminal wrong doing, and the statements were made as a defense why she had engaged in the wrongdoing. The statement itself did not serve to incriminate Appellant because the conduct itself was not criminal but rather a condition of probation. Accordingly, we find the trial court did not err in considering the statements during the revocation proceedings herein.

*State v. Williams*, No. 2013CA00189, 2013 WL 4029085, at *1 (Ohio Ct. App. Aug. 5, 2013). (Return, Ex. 1 at 167.)

After exhausting her state court remedies, on February 5, 2014, petitioner filed her petition for writ of habeas corpus in the U.S. District Court for the Southern District of Ohio. (Doc. No. 1 ["Petition"].) On that same day, she was granted leave to proceed in forma pauperis. The petition was subsequently transferred to this district by order dated April 23, 2014. (Doc. No. 15.)

**B.     Analysis**

Petitioner organizes her challenge to five "findings" of the R&R[4] under three objections:

---

[4] Petitioner's objections are based on the following findings extracted from the R&R: (1) The state court's decision was not an unreasonable application of clearly established federal law; (2) Petitioner offers no evidence that her statement during the disciplinary committee was coerced; (3) There is no Ohio law or rule of professional conduct compelling a lawyer to incriminate herself at a disciplinary hearing; (4) Petitioner's alleged subjective belief that she would be disbarred if she failed to respond to questions at her disciplinary hearing simply is not comparable to the actual threat of job loss faced by the police officers in *Garrity*; and (5) Petitioner presents no evidence in the record that she was prohibited from exercising her right against self-incrimination. (Obj. at 881.)

1. It is clearly established federal law that the Fifth Amendment applies to more than just public employees, [sic] it also applies to attorneys whether or not they are given immunity for their testimony. **The trial court's decision was an unreasonable application of clearly established federal law as determined the the [sic] United States Supreme Court.**

2. This cases [sic] fits under one of the several exceptions to the general rule that the privilege against self-incrimination is not self-executing. The Supreme Court has extended "Garrity protection" to many classes of persons, but in particular lawyers in disbarment and disciplinary hearings in established federal law under the Fifth Amendment from *Garrity v. New Jersey*, and cases extrapolating from Garrity. **The Magistrate's findings failed to apply "penalty situation" as an exception to the general rule.** Additionally, Ohio Supreme Court Gov. Bar Rule V § (4)(G) required Petitioner's testimony, without exception to the Fifth Amendment.

3. Petitioner's will was overborne in the hostile and inherently coercive environment of the disciplinary hearing. Petitioner's "Garrity protection" was triggered based on the penalty exception to the general rule that the Fifth Amendment privilege against self-incrimination is not self executing. **The penalties and sanctions the Petitioner faced and was threatened with were sufficient to cause her to involuntary [sic] make the statements which were later used to incriminate her in violation of the Self-Incrimination Clause of the Fifth Amendment.**

(Obj. at 882, 889, 895, emphases added.) These objections, taken together, relate to but one issue: whether it was a violation of petitioner's Fifth Amendment privilege against self-incrimination to use her testimony from her attorney disciplinary proceeding, which she alleges was coerced by virtue of the potential penalty (i.e., disbarment), to prove a probation violation, resulting in revocation of her probation.

The general rule under the Fifth Amendment is that, "in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Garner v. United States*, 424 U.S. 648, 654, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976) (footnote omitted). An exception is applied where "assertion of the privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and …

compe[l] … incriminating testimony." *Minnesota v. Murphy*, 465 U.S. 420, 434, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984) (quoting *Garner*, 424 U.S. at 661) (alterations in original). The gravamen of petitioner's argument is that the R&R fails to apply this "penalty" exception.

Petitioner relies on two Supreme Court cases decided on the same day to argue that the penalty exception should apply here. First, in *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967), the Court held that confessions made by police officers during an investigation into the fixing of traffic tickets could not be sustained as voluntary under the Fifth Amendment and could not be used against the officers in subsequent criminal prosecutions because the confessions resulted from a choice between forfeiting their jobs or self-incrimination. Second, in *Spevack v. Klein*, 385 U.S. 511, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967), where an attorney was disbarred for asserting his Fifth Amendment privilege by refusing both to provide certain requested financial records and to testify during disciplinary proceedings, the Court held that the privilege against self-incrimination extends its protection to lawyers, who may not be deprived of their livelihood as a price for asserting the privilege.

In these so-called "penalty exception" cases, "the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Murphy*, 465 U.S. at 434 (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 97 S. Ct. 2132, 53 L. Ed. 2d 1 (1977)).

Petitioner argues that she was compelled to testify during the disciplinary proceedings by the threat of loss of livelihood, that is, by the possibility of disbarment;[5] she also claims that she

---

[5] Notably, however, at petitioner's probation revocation hearing, Richard Milligan, Stark County Bar Association Counsel, who had filed the complaint against Williams before the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline, and who also reported her testimony to the prosecuting attorney, testified that,

6

"subjectively believed" that she could not assert her Fifth Amendment privilege against self-incrimination. (*See* Obj. at 894.)

Petitioner's situation is unlike that of the officers in *Garrity* or the attorney in *Spevack*. Neither the officers nor the attorney had been convicted of any crimes, but their compelled testimony either did or could have incriminated them. Here, petitioner was already convicted and was subjected to the disciplinary hearing in light of that fact. She was offering testimony at the disciplinary hearing in an attempt to mitigate – to show, *inter alia*, that her crimes were the result of a gambling addiction. In her view, she was between a rock and a hard place: she needed to answer truthfully at the disciplinary hearing in hopes of proving a mitigating factor to prevent her disbarment, but that truthful testimony ended up revealing a probation violation. Therefore, she claims her damaging testimony was improperly compelled by the threat of disbarment.

The fatal flaw in petitioner's argument is that, no matter how damaging it might have been with respect to her probationary status, her testimony about leaving the state to gamble was not self-incriminating within the meaning of the Fifth Amendment, since it is not illegal to engage in such behavior. *See* BLACK'S LAW DICTIONARY 1853 (10th Ed. 2014) (self-incrimination: "The act of indicating one's own involvement in a crime or exposing oneself to prosecution, esp. by making a statement[.]").

In fact, had the "compelled" testimony occurred during her probation revocation hearing, rather than during her disciplinary hearing, even then she would not have been free to invoke any privilege and refuse to testify. In that sense, the disciplinary proceeding was somewhat analogous to a probation revocation proceeding, where "two principles shape the probationer's

---

although "her participation in the disciplinary process … would be viewed as critical[,] … her failure to participate does not mean there's going to be any particular sanction." (Return, Ex. 10 at 233.) He further noted that "there are lawyers who don't participate who don't get disbarred, but who get a sanction that's appropriate for their conduct." (*Id.*) Petitioner has not refuted this testimony.

constitutional rights." *Murphy*, 465 U.S. at 441 (Marshall, J., dissenting). "First, because probation revocation proceedings are not criminal in nature, and because the Fifth-Amendment ban on compelled self-incrimination applies only to criminal proceedings, the possibility that a truthful answer to a question might result in the revocation of his probation does not accord the probationer a constitutional right to refuse to respond." *Id.* (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). "Second, a probationer retains the privilege enjoyed by all citizens to refuse 'to answer official questions put to him in any … proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings[.]'" *Id.* (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973)).

Having considered petitioner's objections, the Court agrees with the R&R that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, as interpreted by the United States Supreme Court.

### III. CONCLUSION

For the reasons discussed herein, having given de novo review to petitioner's objections to the R&R, the objections are overruled and the R&R is accepted. The petition for writ of habeas corpus is denied and this case is dismissed. The Court also certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

Further, petitioner's motion for bond (Doc. No. 47) is denied, as is the motion to intervene filed by six non-party movants (Doc. No. 34).

**IT IS SO ORDERED**.

Dated: May 18, 2016

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**